## No. 10,186.

### CHARLES S. PITCHER & CO., vs. THEIR CREDITORS.

The duties of a provisional syndic consist in keeping, as a deposit, all the effects of an insolvent debtor, in performing all conservatory acts which may be necessary in demanding and receiving rents and income of the property, in collecting all claims which may become due during his administration, and in accounting to the definite syndic as soon as he is appointed.

He is not authorized to disburse funds which shall come into his hands.

In case no inventory is made of the effects surrendered but only an estimation is made of their value, and a provisional syndic is placed in possession, and subsequently, a definite syndic is elected, and he causes an inventory to be made which discloses an apparent deficit in quantity : *Held*, that in the absence of some direct evidence that the provisional syndic has disposed of, or misappropriated them, he cannot be made responsible for the difference.

APPEAL from the Civil District Court, Parish of Orleans. *Monroe J.*

*B. R. Forman* and *Wm. Armstrong*, for the Syndic, Appellant.

*H. Heidenhain*, contra.

The opinion of the Court was delivered by

WATKINS J. The definitive syndic of the insolvents is appellant from an adverse judgment on his opposition to an account filed by the

provisional syndic. Several of the creditors of the insolvents joined the definitive syndic in his opposition, and are likewise appellants. The grounds of the opposition are :

1st. That the provisional syndic is only entitled to take charge of the estate of the insolvent debtors, and keep the same until a definitive syndic is elected and qualified, and has not the right of administration, or to make any disbursements of moneys entrusted to his care ; and that, in violation of law, he has expended a large sum of money, and has failed to surrender the same to petitioner, and for wh'ch he is responsible.

2nd. That he has not accounted for the goods and property which were placed in his hands as provisional syndic, nor the rents he collected from the subtenants of the insolvents, nor other assets he received.

The judgment of the court *a qua* in part sustained the first ground of objection, and ordered the provisional syndic to pay over to the definitive syndic the entire amount with which he had charged himself on his account, viz : $1926.00, less the sum of $400 paid in fees to his attorney ; $50.00 paid to the attorney for absent creditors ; $77.50 paid to the notary, and $300 paid for rents, and aggregating the sum of $827.50.

But the decree "reserved to the provisional syndic the right to prove contradictorily with the syndic and the creditors, that the (stricken) amounts were disbursed by him in the interest of, or that they inured to the benefit of the creditors, and to recover such of said amounts as may be satisfactorily shown to have been *thus* disbursed.

In other respects the demands of the opponents appear to have been rejected, and they have appealed. The appellee has not joined in the appeal, and asks no amendment of the judgment appealed from.

I

The question presented at the threshold of this controversy is whether the provisional syndic was properly allowed credit on his account, with the items and amounts as have been enumerated above. We think not.

The duties and powers of a provisional syndic are distinctly set out in section 1793 of the Revised Statutes.

It says that "the duties of the provisional syndic shall consist in keeping, as a deposit, all the goods and other effects of the insolvent debtor ; * * in performing all the conservatory acts which may be necessary, as well for the interest of the insolvent debtor as for that of the mass of the creditors ; in demanding and receiving the rents and

incomes of the property, as also all the claims of the insolvent debtor, which may become due during his administration ; of all of which he shall render an account to the syndic appointed by the creditors ; and when rendering the account, shall be entitled to demand for his trouble and services one per cent on the appraised value of the goods and effects confided to his care, and five per cent on the rents and income which he shall have recovered during his administration."

. This is substantially the eleventh section of the insolvent law of 1817.

In *Barkley* vs. *His Creditors* 11 R 30, the court construing its provisions, said : "He," (the provisional syndic,) "has nothing to do with the sale of the estate. He is a mere depository, and he takes the property as he finds it upon the schedule of the insolvent, according to the approximate value therein mentioned, which value is to serve as the basis of the amount of the bond which he is bound to furnish. Thus it is clear, that when the provisional syndic renders his account to the syndic appointed by the creditors, *no change* has taken place in the property which came under his administration, and that the same is by him delivered over to his successor under the schedule, and in the *same state* in which it was at the time of the surrender, except whatever increase may have taken place from the rents and income by him received, or from the collections he may have made." (The italics are ours.)

From the foregoing it is perfectly manifest that a provisional syndic has no power or authority to make *disbursements* of the funds that may come into his hands. Such was the purport of our opinion in *Wood* vs. *His Creditors* 35 A 257.

The district judge granted an order authorizing the provisional syndic "to sell for cash such part of the stock of goods as may be called for," doubtless considering this to be such a "conservatory act" as is contemplated in the section of statutes above quoted ; and it is argued therefrom that, in carrying out this order, certain expenses were necessarily incurred, and it became reasonably necessary that the provisional syndic should pay them in cash. But *that* part of the decree embracing these items is not before us for review, and this order does not effect the remaining issue under present consideration.

Concerning the four items, the payment of which the court approved, it is said in argument that, while the payment should have properly awaited the distribution of funds by the definitive syndic, no good purpose with be subserved by requiring the provisional syndic to reimburse the amount, merely for the purpose of enabling the syndic to place it on his account and return it to the claimants again.

This is the doctrine *ab inconvenienti*, of which courts of justice can take no notice.

The one under consideration is a question of grave and serious import, and it very nearly concerns the creditors of every insolvent debtor.

We are requested to sanction the act of the provisional syndic in distributing the funds of the insolvents, among those whom *he* deemed entitled to receive them, without an order of court, and prior to the election of a syndic, as one that is authorized by law.

We say "without an order of court" advisedly, because the district judge granted but one, authorizing the payment of money, and it embraced but a small portion of one of the items under discussion, and that is $75 of the claim for rent. This order is *sui generis* and is in these words, viz:

"Let petitioner be authorized to *act* as within prayed for and according to law."

We feel constrained to decline this request and to refuse to sanction the act of the provisional syndic, because it was unwarranted by the law. To concede such authority to a provisional syndic would be to open the door to fraud upon the insolvent debtor and his creditors.

A surrender is made by the insolvent debtor to his creditors and it is accepted by the judge for their benefit. In contemplation of law, all proceedings looking to a disposition of the property surrendered and the application of its proceeds to the payment of creditors, whether privileged or ordinary, are to be postponed until they have chosen a definitive syndic, and he shall have qualified and furnished bond.

In the interim the provisional syndic is required to keep the property " as a deposit " and perform " all conservatory acts which may be necessary " for its preservation and safe keeping.

In the interest of an orderly administration of justice we deem it necessary to rigidly enforce these provisions of the insolvent law.

The provisional syndic made these payments in error, and at his own risk, and he must account to the definitive syndic for the full amount thereof whenever he shall file his account and tableau of distribution among the creditors. Rodriguez vs. Dubertrand, 1 R. 538; Goodale vs. His Creditors, 8 La. 301.

But we are of opinion that the item of rent stands upon a different footing. The instalments thereof seem to have been evidenced by notes, and the *ex parte* order of the judge *a quo* specially authorized the payment of *one* of them. In addition to this, his general order

50

permitting the provisional syndic to make sales of the goods in the usual course of business, and *without opposition by the creditors*, would seem to justify the payment of such *pressing* claims out of the proceeds. Doubtless the judge below viewed this in the light of a conservatory *act* he was authorized to allow, and we will not disturb his ruling under the circumstances.

## II.

The contention of the opponents' counsel on the other branch of the opposition, that the provisional syndic has not accounted for the full amount of the merchandise that was placed in his custody, and which was *estimated* in the schedule of the insolvent at $14,769.50, is somewhat involved.

The facts brought out in the record are about as follows : No inventory was taken of the merchandise that was surrendered, the only mention of it in the schedule being "Merchandise, $14,769.50."

The cession of the insolvents was made in November, 1886, and a definitive syndic was not chosen by the creditors and qualified until in March following.

He caused an inventory to be made of the stock of merchandise and the appraisement was only $5,431.93.

It appears that one of the insolvents was appointed by the judge, provisional syndic, and, under the authority of the judge's order heretofore adverted to, he made sales of goods to customers "in the usual course of dealing" to the amount of about $750, of which he renders an account; but it nowhere appears what *kind, quality or quantity* of goods he sold, the only items in his account that serve as a guide in ascertaining the *amount* of sales being " mdse sales," entered with the amounts set opposite, and as of different dates. These daily sales appear to have been very small. In the month of November after the surrender, there is no sale reported as made on any given date of an amount in excess of $6.65. During the month of December the total amount of sales was $38.35, and of this amount $4.20 were realized during the last fifteen days thereof; and on six consecutive days the exact sum of *thirty-five* cents was daily reported as the total amount of merchandise sold. But in the month of February, just before the termination of this trust, we find the items swollen to the proportion of $39, $56, $62 and $260, respectively.

The consequence was that when the effects of the insolvent were surrendered to the definitive syndic, there was an apparent deficit of $9,337.57. Whether this was caused by the fault or misconduct of the provisional syndic, or was the result of an overestimate of the value

in the schedule, or that of natural causes of depreciation, it is difficult to determine from the evidence in the record, which is meagre indeed.

It may be accounted for in part by the increased price for which the goods were sold at public auction by the syndic, the amount of diminution in the value of winter goods disposed of in the spring, the fact that the merchandise was estimated at 20 or 30 per cent above their prime cost, and the further diminution occasioned by the daily sales made by the provisional syndic. We are not prepared to say that any fault is attributable to the latter, but it is manifest that the opportunity was not wanting, though it may not have been taken advantage of. That opportunity consisted in the fact that the insolvents prepared and filed no inventory of the merchandise which they surrendered, and consequently there was absolutely no restraint placed upon him in the disposition of the goods. The opponents have not questioned the authority of the judge to grant the provisional syndic permission to make such sales, and hence it is not the proper subject of discussion now. Therefore we can only refer to it as demonstrating the impolicy of allowing such a trustee to dispose of an insolvent's property and to pay charges at will. Under the facts detailed we are not prepared to say that the provisional syndic has not accounted for all the property that came into his hands. It may be that the insolvents placed too high an estimate on their merchandise, or a portion of it may have been withheld by them after making their surrender, but these are questions to be determined between them and their creditors. We feel bound to concur with the district judge in the views he entertained in this particular.

It is therefore ordered and decreed that the judgment appealed from be amended by rejecting the credits allowed to the provisional syndic for the sum of $50, paid to the attorney of absent creditors; of $77.50 paid to Downing, notary, and of $400 paid to H. Heidenheim, attorney for the insolvents and the provisional syndic, and amounting to $527.50, and requiring him to account therefor to the definitive syndic when he shall file his account and tableau of distribution, and that, as thus amended, same be affirmed at the cost of the appellee.